IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

TRUEPOSITION, INC.,

                    Plaintiff,

      v.

SUNON, INC., SUNONWEALTH ELECTRIC
MACHINE INDUSTRY CO., LTD., and
DA CROWLEY AND ASSOCIATES,

                    Defendants.

CIVIL ACTION
NO. 05-03023-JD

**JURY TRIAL DEMANDED**

**SUR-REPLY OF PLAINTIFF TRUEPOSITION, INC. IN OPPOSITION
TO MOTION TO QUASH AND/OR DISMISS OF DEFENDANT SUNON**

William T. Hangley
Sharon F. McKee
Nina L. Russakoff
HANGLEY ARONCHICK SEGAL & PUDLIN
Attorney ID Nos. 03533, 81499, 89592
One Logan Square, 27th Floor
Philadelphia, Pennsylvania 19103
(215) 568-6200

Dated:  March 13, 2006          Attorneys for Plaintiff

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................................... 1

II.     THE MOTION TO QUASH SERVICE SHOULD BE DENIED ..................................... 1

    A.      The Law of Taiwan Permits Service by Mail ........................................................ 1

    B.      The Micrel Decision Does Not Hold that Service by International
        Registered Mail Is Invalid in the Circumstances Presented Here ........................... 3

    C.      The Decisions that Sunon Cites Do Not Support their Argument
        that a Method of Service Is Prohibited under Rule 4(f)(2)(C) Unless
        Expressly Prescribed ........................................................................................... 4

    D.      Sunon's Continuing Efforts to Evade Service Further Justify Alternate
        Service and Imposition of Costs .......................................................................... 5

III.    SUNON IS SUBJECT TO PERSONAL JURISDICTION IN THE EASTERN
    DISTRICT OF PENNSYLVANIA .............................................................................. 7

    A.      Uncontroverted Evidence Shows that Sunon Is Subject to the Personal
        Jurisdiction of this Court ..................................................................................... 7

    B.      Sunon Has Not Satisfied its Heavy Burden of Demonstrating that the
        Exercise of Jurisdiction Would Be Unreasonable ............................................... 14

    C.      TruePosition Is Entitled to Jurisdictional Discovery .......................................... 15

IV.     SUNON'S EVIDENTIARY OBJECTIONS SHOULD BE OVERRULED ................... 16

V.      CONCLUSION ...................................................................................................... 24

i

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

A.V. Imports, Inc. v. Col de Fratta, S.p.A., 171 F. Supp. 2d 373 .......................................10, 13, 14

Ali v. City of Clearwater, 915 F. Supp. 1231 (M.D. Fla. 1996) ....................................................16

Alvord-Polk, Inc. v. F. Schumacher & Co., 37 F.3d 996 (3d. Cir. 1994)....................................19

AMP Inc. v. Methode Electronics, Inc., 823 F. Supp. 259 (M.D. Pa. 1993)................................11

Asahi Metal Industry Co., Ltd. v. Superior Court, 480 U.S. 102 (1987)....................................8, 9

Bakowski v. Kurimai, No. 3:98CV2287 DJS, 2000 WL 565230
     (D. Conn. Mar. 20, 2000) ......................................................................................................18

Benton v. Cameco Corp., 375 F.3d 1070 (10th Cir. 2004).........................................................11

Betterbox Communications Ltd. v. BB Technologies, Inc., 300 F.3d 325 (3d Cir. 2002)...........22

Border Collie Rescue, Inc. v. Ryan, No. 304CV568J32HTS, 2006 WL 485117
     (M.D. Fla. Feb. 28, 2006) ..................................................................................................17, 19

Bouriez v. Carnegie Mellon University, Civ.A. No. 02-2104, 2005
     WL 2106582 (W.D. Pa. Aug. 26, 2005) ..............................................................................17

Burger King v. Rudzewicz, 471 U.S. 462 (1985)..............................................10, 11, 12, 13, 14

Casa Office Machines, Inc. v. Mita Copystar America, Inc., 42 F.3d 668
     (1st Cir. 1994) .......................................................................................................................16

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ..................................................................... 2, 18

Chrisiana Marine Service Corp. v. Seaboard Shipping Corp., No. 96-8705,
     1997 WL 587292 (E.D. Pa. Sept. 10, 1997) ........................................................................20

Corcoran v. Shoney's Colonial, Inc., Civ. A. No. 96-0043-C,
     1997 WL 470365 (W.D. Va. July 31, 1997).........................................................................18

Dee-K Enterprises, Inc. v. Heveafil SBN BND, 174 F.R.D. 376 (E.D. Va. 1997) ...................2, 23

DeJames v. Magnificence Carriers, Inc., 654 F.2d 280 (3d Cir. 1981) .....................................10

DePaola v. Nissan North America, Inc., No. Civ.A. 1:04CV267-W,
     2005 WL 2122265 (M.D. Ala. 2005) ...................................................................................18

Electro Medical Equipment, Ltd. v. Hamilton Medical AG, Civ. A. No. 99-579, 1999
     WL 1073636 (E.D. Pa. Nov. 16, 1999) ...........................................................................10, 14

Elisian Entertainment, Inc. v. Suazo, 206 F.R.D. 335 (D.P.R. 2002)...........................................2

Endless Pools, Inc. v. Wave Tec Pools, Inc., 362 F. Supp. 2d 578
     (E.D. Pa. 2005)......................................................................................................................15

Florida Conference Association of Seventh-Day Adventists v. Kyriakides,
     151 F. Supp. 2d 1223 (C.D. Cal. 2001.) ..............................................................................19

**Page(s)**

Forum Finance Group, LLC v. President, Fellows of Harvard College, Civ. A. No. 03-8554,
    2005 WL 1123755 (S.D.N.Y. May 11, 2005) ....................................................................5

Gasaway v. Northwestern Mutual Life Insurance Co., 27 F.3d 957 (9th Cir. 1994)....................16

General Electronic Co. v. Deutz AG, 270 F.3d 144 (3d Cir. 2001) ............................................14

Grand Entertainment Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476
    (3d Cir. 1993)..................................................................................................................9, 14

Graval v. P.T. Bakrie & Brothers, 986 F. Supp. 1326 (C.D. Cal. 1996) .......................................4

H.A.S. Protection, Inc. v. Senju Metal Industry Co., Ltd., No. 03-1215, 2003
    WL 23419852 (E.D. Pa. Feb. 27, 2003) ..........................................................................13

Hicks v. Harris, 606 F.2d 65 (5th Cir. 1979) .............................................................................17

Integral Nuclear Associates LLC v. Nair, Civ. A. No. 05-382, 2005
    WL 2012036 (E.D. Pa. Aug. 19, 2005) ............................................................................13

Ipoint Ventures, LLC v. Pequot Capital Management, Inc., Civ. A. No. 04-6026, 2005
    WL 1828586 (D.N.J. July 29, 2005)..................................................................................11

James v. York County Police Department, No. 01-1015, 2004 WL 3331865
    (M.D. Pa. 2004) ..................................................................................................................2

Jones v. Owens-Corning Fiberglas Corp., 69 F.3d 712 (4th Cir. 1995) ....................................16

Kirschner Brothers Oil Inc. v. Pannill, 697 F. Supp. 804 (D. Del. 1988)...................................15

In re: Latex Gloves Products Liability Litigation, No. MDL 1148, 2001 WL 964105
    (E.D. Pa. Aug. 22, 2001)...............................................................................................10, 20

LDM Systems, Inc. v. Russo, No. 97-3111, 1997 WL 431005
    (E.D. Pa. July 15, 1997) ....................................................................................................16

Lucerne Farms v. Baling Technologies, Inc., 226 F. Supp. 2d 255 (D. Me. 2002).....................12

Mellon Bank (East) PSFS, National Association v. Farino, 960 F.2d 1217
    (3d Cir. 1992)..............................................................................................................9, 13, 14

Mesalic v. Fiberfloat Corp., 897 F.2d 696 (3d Cir. 1990) ..........................................................13

Modern Computer Corp. v. Ma, 862 F. Supp. 938 (E.D.N.Y. 1994) ...........................................23

Pennzoil Products Co. v. Colelli & Associates, Inc., 149 F.3d 197 (3d Cir. 1998).......................8

Perfect 10, Inc. v. Cybernet Ventures, Inc., 213 F. Supp. 2d 1146 (C.D. Cal. 2002)..................19

Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc., 998 F.2d 1224
    (3d Cir. 1993)....................................................................................................................17

Pinker v. Roche Holdings Ltd., 292 F.3d 361 (3d Cir. 2002)................................................10, 11

Power Integrations v. System General Corp., No. 04-02581, 2004 WL 2806168
    (N.D. Cal. Dec. 7, 2004) ...........................................................................................4, 21, 23

**Page(s)**

Prewitt Enterprises, Inc. v. Organization of the Petroleum Exporting Countries,
224 F.R.D. 497 (D. Ala. 2002) ...............................................................4, 5

In re Prudential Co. Am. Sales Practices Litig., 278 F.3d 175 (3d Cir. 2002) .................................7

Renner v. Lanard Toys Ltd., 33 F.3d 277 (3d Cir. 1994)......................................................8, 9, 11

Resource Ventures, Inc. v. Resources Management International, Inc., 42 F. Supp. 2d 423
(D. Del.1999) .................................................................................................................23

Rio Properties, Inc. v. Rio International Interlink, 284 F.3d 1007 (9th Cir. 2002) ....................4, 6

In re Rockefeller Center Properties, Inc. Securities Litigation, 184 F.3d 280 (3d Cir. 1999).......17

S.E.C. v. Dowdell, Civ. A. No.01-cv-00116, 2002 WL 424595
(W.D. Va. Mar. 14, 2002)...........................................................................................2

Sher v. Johnson, 922 F.2d 1357 (9th Cir. 1990) ..............................................................................9

Toys "R" Us v. Step Two, S.A., 318 F.3d 446 (3d Cir. 2003) ......................................................15

United States ex rel. Dingle v. BioPort Corp., 270 F. Supp. 2d 968
(W.D. Mich. 2003)........................................................................................................21

United States v. Cooper, 396 F.3d 308 (3d Cir. 2005) ...................................................................7

U.S. Equal Employment Opportunity Commmission v. E.I. DuPont
de Nemours & Co., Civ. A. No. 03-1605, 2004 WL 2347559
(E.D. La. Oct. 18, 2004)..........................................................................................19, 21

United States v. Johnson, 143 Fed. Appx. 436 (3d Cir. 2005) .....................................................18

Urgent v. Technical Assistance Bureau, Inc., 255 F. Supp. 2d 532 (D. Va. 2003) .......................12

Van Westrienen v. Americontinental Collection Corp., 94 F. Supp. 2d 1087
(D. Or. 2000)..................................................................................................................19

Verotex CertainTeed Corp. v. Consolidated Finer Glass Products Co., 75 F.3d 147
(3d Cir. 1995).........................................................................................................11, 13

Williams v. Borough of West Chester, Pa., 891 F.2d 458 (3d. Cir. 1989) ...............................2, 18

Williams v. Evangelical Retirement Homes, 594 F.2d 701 (8th Cir. 1979).................................16

Wright v. Montgomery County, Civ. A. No. 96-4597, 2002 WL 1060528
(E.D. Pa. May 20, 2002) ...............................................................................................17

Zippo Manufacturing Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119 (W.D. Pa. 1997) .........9, 20

**Rules**

Fed. R. Evid. 801 .................................................................................................9, 18, 19, 20

Fed. R. Evid. 803 ...........................................................................................................21, 22

**Page(s)**

Fed. R. Evid. 901 ...........................................................................................................19

Fed. R. Evid. 902 .....................................................................................................21, 22

## I.      INTRODUCTION

Defendant Sunonwealth Electric Machine Industry Co. ("Sunon") apparently hopes that the force of the rhetoric employed in its Reply[1] will obscure the fact that its motions to quash service, dismiss the Complaint or transfer the action are without merit.   When Sunon's arguments are examined, however, it is still apparent that Sunon has been served with original process and is subject to the Court's jurisdiction.

## II.     THE MOTION TO QUASH SERVICE SHOULD BE DENIED

### A.      The Law of Taiwan Permits Service by Mail

Neither the Mircel decision nor Taiwanese statutory law supports Sunon's argument that service of original process by registered mail is prohibited.   To the contrary, as Taiwanese attorney Jacqueline Fu explained in her Declaration, the Taiwan Code of Civil Procedure allows service by registered mail or personal delivery.   (TruePosition Br., Ex. L, Declaration of Jacqueline Fu ("Fu Decl."), ¶ 8.)  Specifically, Articles 123 and 124 of the code provide that in domestic matters service of original process is to be made by the clerk of the court via either a designated agent or mail.   (See Supplemental Declaration of Jacqueline Fu ("Fu Supp. Decl.") ¶ 2, Ex. 1[2].)   Article 145 allows service of process abroad to be made by anyone who is

---

[1] The full title of Sunon's reply brief is "Sunonwealth's Reply in Support of Motion to Quash Service of Summons for Improper Service, Motion to Dismiss for Lack of Personal Jurisdiction and Motion to Dismiss on Grounds of Forum Non Conveniens, or in the Alternative, Transfer Venue to Central District of California, Los Angeles Division."   Hereinafter, TruePosition will refer collectively to the brief and the various declarations and documents that Sunon filed on February 24, 2006 as the "Reply Brief."

[2] Along with its Reply Brief, Sunon also served 30 pages of evidentiary objections to the exhibits TruePosition offered in support of its Response.   (Dkt. No. 36.)   Sunon does not credit its own objections, for it admits to and cites exhibits against which it has lodged authenticity objections.   (See, e.g., Def. Reply Br. at 4 (discussing the "true" meaning of the U.S. State Department circular).)  In addition, Sunon appears to misunderstand the evidentiary standard applicable at this stage of the proceedings.   Courts can consider evidence outside the pleadings in
(continued...)

authorized to serve process in that country or, failing that, by registered mail. (Fu Supp. Decl. ¶ 3 Ex. 1.)  Thus, Taiwan's Code of Civil Procedure establishes two essential points.  First, service by registered mail is not prohibited by Taiwanese law, see Fed. R. Civ. P. 4(f)(2)(C), nor can such service be deemed to offend Taiwanese law under principles of comity.  Second, when the Clerk of this Court sent the Summons and Complaint to Defendant Sunon via international registered mail, the Clerk effected service "in the manner prescribed by the law of the foreign country for service in that country in an action in any of its courts of general jurisdiction," as permitted under Fed. R. Civ. P. 4(f)(2)(A).  See, e.g., Elisian Entm't, Inc. v. Suazo, 206 F.R.D. 335, 337 (D.P.R. 2002); S.E.C. v. Dowdell, Civ. A. No. 01-00116, 2002 WL 424595, at *14 (W.D. Va. Mar. 14, 2002); Dee-K Enters. Inc. v. Heveafil SBN BND, 174 F.R.D. 376, 382 (E.D. Va. 1997).

---

(continued...)

a 12(b)(2) Motion without converting that Motion into one for Summary Judgment, unlike other Motions to Dismiss under Rule 12.  James v. York County Police Dep't, Civ. A. No. 01-1015, 2004 WL 3331865, at *5 n. 6 (M.D. Pa. Aug. 17, 2004).  Even at the summary judgment stage, however, the full rules of evidence applicable at a trial on the merits are not applicable.  Instead, at the summary judgment stage Courts use a 'can be reducible to admissible form at trial' standard of admissibility.  Williams v. Borough of West Chester, Pa., 891 F.2d 458, 466 n.12 (3d. Cir. 1989) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986)).  Nonetheless, in an effort to clear up any confusion with the Court as to how TruePosition's exhibits were compiled, TruePosition offers, along with this brief, supplementary declarations authenticating each of the exhibits.  See Supplemental Declaration of Sharon F. McKee, attached as Exhibit 2; Supplemental Declaration of Mark Jones, attached as Exhibit 3; Declaration of Nina Russakoff, attached as Exhibit 4; Declaration of Sandra Peters, attached as Exhibit 5; Declaration of Stanley Tyszka, attached as Exhibit 6; and Declaration of Sheila Knox-Pettiford attached as Exhibit 7. TruePosition's further response to Sunon's objections is set forth below.

**B.      The <u>Micrel</u> Decision Does Not Hold that Service by International Registered Mail Is Invalid in the Circumstances Presented Here**

<u>Micrel, Inc. v. Han Men Industry Corp.</u> does not hold, as Sunon contends, that Taiwanese law prohibits service by international mail, nor is the actual holding dispositive of the question presented here. (Def. Reply Br. 3.) In Taiwan, only those decisions that the Taiwan Supreme Court designates as precedential are binding on lower courts, and the Taiwan Supreme Court has chosen not to give <u>Micrel</u> this designation. (Fu Supp. Decl. ¶ 4.) Regardless of the decision's weight, however, <u>Micrel</u> does not address, much less resolve, the validity of service by international registered mail under the circumstances presented here. Instead, <u>Micrel</u> illustrates that Taiwanese courts may not enforce a foreign judgment if the Taiwanese defendant did not "respond" to a foreign action. (Fu Supp. Decl. ¶ 5.) Sunon has responded to this action, and therefore cannot take refuge in <u>Micrel</u>.

As TruePosition has previously shown, Taiwanese courts will not enforce judgments when the defendant defaulted unless service was made either with the assistance of the courts of Taiwan or in the country where the action was filed. (TruePosition Br. at 14, Ex. L ¶ 12.) In <u>Micrel</u>, the Taiwan Supreme Court concluded that the Taiwanese defendant had not responded to the foreign action because the defendant did not appear for oral argument on a motion for summary judgment, nor had it received notice of the hearing. (Kole Decl., Ex. B.) The reasoning of the <u>Micrel</u> decision has no bearing here, however, because, as TruePosition has demonstrated, a Taiwanese court would conclude that a judgment against Sunon was enforceable, because Sunon has "responded" to this action within the meaning of Taiwanese law by entering its appearance and filing the Motion to Quash and Dismiss. (Fu Decl. ¶¶ 12, 14; Fu Supp. Decl. ¶ 6.)

Ultimately, as Sunon concedes, the question of whether a Taiwanese court will enforce the judgment of this Court is distinct from the question of whether TruePosition has effected service in accordance with Rule 4(f).  See Power Integrations v. System General Corp., No. 04-02581, 2004 WL 2806168, at *3 (N.D. Cal. Dec. 7, 2004) (finding service valid under Rule 4 even though Plaintiff "may have difficulty enforcing a judgment if they rely solely" on service by Federal Express).  Sunon has been properly served under Rule 4(f), and therefore its motion to quash service should be denied.[3]

### C.   The Decisions that Sunon Cites Do Not Support their Argument that a Method of Service Is Prohibited under Rule 4(f)(2)(C) Unless Expressly Prescribed

As TruePosition demonstrated in its response to Sunon's Motion, several courts interpreting Rule 4(f)(2)(C) have concluded that the Rule's proviso that the Clerk of the Court can make service by mail "unless prohibited by the law of the foreign country" does not mean that the law of the foreign country must expressly permit service by mail.  (See TruePosition Br. at 13 & n.4.)  The two decisions that Sunon cites in its Reply Brief do not lessen the persuasive weight of TruePosition's authority – indeed, Prewitt supports it.

The Ninth Circuit cast the first of Sunon's cases, Graval v. P.T. Bakrie & Brothers, 986 F. Supp. 1326 (C.D. Cal. 1996), into significant doubt when it found that the Graval court had misread Rule 4 and the advisory notes in interpreting Rule 4(f)(3).  See Rio Props., Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1014-15 (9th Cir. 2002).  In the second case, Prewitt Enterprises, Inc. v. Organization of the Petroleum Exporting Countries, 224 F.R.D. 497 (D. Ala. 2002), the District Court expressly declined to decide how Rule 4(f)(2)(C) should be interpreted, finding

---

[3] In this regard it is noteworthy that Sunon has stated that TruePosition will be able to enforce any judgment against it in California (TruePosition Br. at 23-24), making the question of the judgment's enforceability in a Taiwanese court something of an academic exercise.

that the law of the foreign country in question – Austria – had by agreement with OPEC expressly prohibited the service of process employed in that case on OPEC. Id. at 500. Moreover, in *dictum*, the Prewitt court opined that Rule 4(f)(2)(C) would permit a method of service that "complies with the judicial norms established by the foreign nation itself." Id. at 502 n.6 (noting, for instance, that service by facsimile is often found acceptable by U.S. courts in cases involving domestic service even though the Federal Rules of Civil Procedure do not expressly allow it). Under the Prewitt court's reasoning, Sunon's motion to dismiss would be quashed because the evidence demonstrates that service by registered mail is within the judicial norms of Taiwan.

### D.    Sunon's Continuing Efforts to Evade Service Further Justify Alternate Service and Imposition of Costs

In its Brief in opposition to Sunon's motion to quash service, TruePosition asked the Court to exercise its authority under Rule 4(f)(3) to either deem Sunon served or allow TruePosition to effect service on Sunon by delivering the Complaint and Summons to Sunon's U.S. counsel, with Sunon to bear the costs of reservice. (TruePosition Br. at 16-18.) Since TruePosition filed its brief on February 10, 2006, Sunon has continued its efforts to avoid service, further justifying the relief requested under Rule 4(f)(3). See Forum Fin. Group, LLC v. President, Fellows of Harvard Coll., Civ. A. No. 03-8554, 2005 WL 1123755, at *4-*5 (S.D.N.Y. May 11, 2005) (authorizing service on foreign defendant's U.S. counsel when the foreign defendant was avoiding service).

On January 20, 2006, the Summons and Complaint in this action, together with certified Chinese translations, were dispatched to Sunon by the Clerk of this Court.[4] (Dkt. No. 30.) The

---

[4]    TruePosition contends that Sunon was properly served in November 2005. TruePosition nevertheless asked the Clerk to serve the Summons and Complaint a second time,
(continued...)

Clerk sent these documents to the same address used when the Clerk dispatched the Summons and Complaint in November 2005, which Sunon has admitted receiving.  Although the January 2006 package was returned with a notation that Sunon had allegedly "moved" without leaving a forwarding address, Sunon's counsel admits that Sunon has not moved and did receive the package.  (See Letter from Yi-Chin Ho, Esquire, to Nina L. Russakoff, Esquire, dated Feb. 16, 2006, attached as Exhibit 8.)

Rule 4 states that every defendant, including those like Sunon who are subject to service under Rule 4(f), have "a duty to avoid unnecessary costs of serving the summons." Fed. R. Civ. P. 4(d)(1).[5]  In violation of this duty, Sunon has multiplied the costs of service not only by refusing to waive service in September, but then by filing its meritless motion to quash service after agreeing to accept service,[6] attempting to thwart service by returning the copy of the Summons and Complaint served in January 2006, and by insisting that TruePosition serve it via letter rogatory, an exercise whose sole purpose can be only to further delay the action and inflict unnecessary costs on TruePosition.  See Rio Props., 284 F.3d at 1015 (rejecting argument that

---

(continued...)

together with the certified translations, to render moot any dispute over the delivery of a certified Chinese translation.  (See TruePosition Br. at 15 n.7, Ex. K ¶ 8.)

[5] TruePosition satisfied the predicate to Rule 4(d)(1) by requesting that Sunon waive service.  (See TruePosition Br. at 11, Ex. K ¶ 2.)

[6] Notably, while Sunon contends that it did not agree to accept service, it does not deny that it received Ms. McKee's letter of November 23, 2005 memorializing her understanding that Sunon was accepting service, or that it never advised Ms. McKee that her letter was (allegedly) inaccurate in any way, or that it accepted the extension that TruePosition gave Sunon in reliance on Sunon's representation that it had accepted service.  In the interest of completeness, TruePosition attaches as Exhibit 9 the remainder of the exchange of correspondence that Ms. Ho has omitted from Exhibit 3 to her Declaration.

the Court could not authorize service under Rule 4(f)(3) until the procedures of Rule 4(f)(2), including letters rogatory, had been attempted).

In arguing that the Court may not impose costs on it pursuant to Rule 4(d), Sunon ignores both the plain language of Rule 4(d)(5) and the Court's inherent power to award costs when a party has acted vexatiously or for oppressive reasons.  See In re Prudential Co. Am. Sales Practices Litig., 278 F.3d 175, 188-89 (3d Cir. 2002) (discussing the courts' inherent power).  An interpretation of Rule 4(d) that never permitted courts to impose costs on individuals served outside the United States would improperly render Rule 4(d)(5) -- which states that the costs "shall include" costs incurred in effecting service under Rule 4(f)) – superfluous.  See United States v. Cooper, 396 F.3d 308, 312 (3d Cir. 2005).  Rule 4(d)(2) is appropriately understood to require courts to impose the costs on defendants located in the United States ("the court *shall* impose the costs"), while leaving courts with the discretion to impose costs on foreign defendants when appropriate without offending principles of comity.  The Micrel decision demonstrates that Taiwan courts, like U.S. courts, have rules governing service to ensure that defendants receive due process by getting actual notice of a lawsuit and having an opportunity to respond (see Kole Decl. Ex. B, at 3), not to allow them to create unnecessary delay and costs as a litigation ploy.  Comity would not be offended if the Court exercised its discretion to impose costs on Sunon for its vexatious and oppressive actions.

## III.   SUNON IS SUBJECT TO PERSONAL JURISDICTION IN THE EASTERN DISTRICT OF PENNSYLVANIA

### A.   Uncontroverted Evidence Shows that Sunon Is Subject to the Personal Jurisdiction of this Court

In its Reply Brief, Sunon argues that it did not have minimum contacts with Pennsylvania because it allegedly did not know to whom Sunon's wholly-owned subsidiary and sales agent, Sunon/USA, sold the defective fans that Sunon manufactured, allegedly did not know who

received the fraudulent 2003 Life Test Report that Sunon created and sent to Sunon/USA, and because its direct participation in a series of communications by conference call, email and facsimile – focused on determining why Sunon's fans had failed – took place one year after TruePosition bought the fans and did not involve travel to Pennsylvania. All of these arguments have been rejected by courts of the Third Circuit, and Sunon's own admissions establish that this Court has specific jurisdiction over Sunon.

Because this action concerns a defective product and the fraudulent statements its manufacturer made to sell it, a "stream of commerce" analysis applies. The Third Circuit has yet to determine whether the fact that the manufacturer placed the product into the stream of commerce knowing that the final product will be marketed in the forum state is alone sufficient to establish minimum contacts, or whether "additional conduct" evincing "an intent or purpose to serve the market is needed." See Renner v. Lanard Toys Ltd., 33 F.3d 277, 279-84 (3d Cir. 1994) (examining the plurality opinions of Justices Brennan & O'Conner in Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102 (1987)); accord Pennzoil Prods. Co. v. Colelli & Assocs., Inc., 149 F.3d 197, 206-07 (3d Cir. 1998). TruePosition has demonstrated, however, that even if this Court were to employ Justice O'Conner's more stringent "additional conduct" standard, Sunon has the minimum contacts required to establish jurisdiction. (TruePosition Br. at 20-35.) TruePosition specifically demonstrated that Sunon used its website to advertise in Pennsylvania and establish channels for providing advice in Pennsylvania,[7] and that Sunon marketed its fans through the distribution network it established to sell its fans in Pennsylvania – all factors that

---

[7] While Sunon attempts to make much of the fact that some of the information about its distribution network is found on Sunon/USA's webpages, it fails to note that searches of its catalog and the page that customers may use to send questions and comments to Sunon are found on Sunon's English-language webpage, www.sunon.com. (TruePosition Br. Ex. E at [9], Ex. H ¶¶ 5-6.)

Justice O'Conner identified as the type of "additional conduct" warranting a finding of purposeful availment.  See Asahi, 480 U.S. at 112.  Sunon used its distribution network and website to sell the fans at issue to TruePosition.

Sunon cannot escape jurisdiction by using its subsidiary and representative, Sunon/USA and DA Crowley, to sell its fans here, because its agents' contacts with Pennsylvania are Sunon's contacts for purposes of the jurisdictional analysis.  See Renner, 33 F.3d at 282 ("[T]he absence of direct sales or shipments into the forum is not dispositive.").  Sunon admits that Sunon/USA, its wholly-owned subsidiary, "directly and through distributors and representatives, sells, distributes and markets fans that it purchases from Sunonwealth."  (Wu Decl. ¶ 4; Def. Reply Br. at 15.)  Sunon admits that TruePosition bought the fans at issue from Sunon/USA (Wu Decl. ¶¶ 24-26) and that DA Crowley is one of Sunon/USA's representatives.  (Def. Br. at 4; Def. Reply Br. at 15.)  These admissions alone are enough to establish that Sunon/USA and DA Crowley are Sunon's agents.[8]  In the jurisdictional analysis, an agent's contacts with the forum state are attributable to the principal.  See Grand Entm't Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 483 (3d Cir. 1993) (citing, inter alia, Sher v. Johnson, 922 F.2d 1357, 1362 (9th Cir. 1990)); Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1226 & n.5 (3d

---

[8] The Sunon website, discussed in TruePosition's Brief at 22-24, provides further evidence that Sunon has "purposefully availed" itself of the privilege of selling its fans in Pennsylvania with the help of Sunon/USA, DA Crowley and the Pennsylvania distributors.  See Fed. R. Evid. 801(d)(2); (see also Def. Reply Br. at 11 (admitting website content)).  Sunon's contention that its website is passive, and therefore (Sunon argues) not a basis for exercising jurisdiction, overlooks the fact that users on both the Sunon and the Sunon/USA pages can exchange information with the host computer, placing the website in at least the "intermediate" level of interactivity described in Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1124 (W.D. Pa. 1997). (See TruePosition Br. Exs. E, H-2.)  Nonetheless, this website's level of interactivity, its use in the actual course of dealing of the parties and its specific, purposeful availment of the Pennsylvania market combined with the parties' continuing relationship over more than three years combine easily to create jurisdiction in this court.

Cir. 1992); A.V. Imports, Inc. v. Col de Fratta, S.p.A., 171 F. Supp. 2d 369, 374 (D.N.J. 2001)

(noting that a manufacturer may be amenable to process "even if the products were sold

indirectly through importers or distributors with independent sales and marketing schemes").

Thus, the many contacts that Sunon/USA and DA Crowley had with Pennsylvania when they

sold the defective fans to TruePosition are included in determining Sunon's minimum contacts,

and TruePosition need not pierce the corporate veil or demonstrate that Sunon/USA was Sunon's

alter ego to establish that Sunon is amenable to process here.[9]  See Electro Med. Equip. Ltd. v.

Hamilton Med. AG, Civ. A. No. 99-579, 1999 WL 1073636, at *8-*10 (E.D. Pa. Nov. 16, 1999);

see also A.V. Imports, 171 F. Supp. 2d at 374.  The fact that Sunon used a wholly-owned

subsidiary, rather than an independent distributor, to market its products in Pennsylvania only

strengthens Sunon's ties to Pennsylvania.  See Electro Med. Equip., 1999 WL 1073636, at *7,

*10 (Swiss manufacturer that marketed its products through its Nevada subsidiary (which used a

Pennsylvania-based sales representative and distributor) created a 'canal of commerce' into this

state).

     Sunon's professions of ignorance that its fans or fraudulent statement would go to

Pennsylvania do not alter the analysis or result.  See DeJames v. Magnificence Carriers, Inc., 654

F.2d 280, 285 (3d Cir. 1981) ("[T]he fairness requirements of due process do not extend so far as

---

[9] For the reasons set forth in its Brief at 26-29, TruePosition has presented evidence that,
when properly construed in TruePosition's favor, see Pinker v. Roche Holdings Ltd., 292 F.3d
361, 368 (3d Cir. 2002), demonstrates that Sunon and Sunon/USA operated as a single entity or
as alter egos of each other.  Contrary to Sunon's assertion, TruePosition's observation during its
course of dealings with Defendants that Sunon and Sunon/USA acted as a single entity to make
all of the critical decisions is highly relevant.  See Burger King v. Rudzewicz, 471 U.S. 462,
480-81 (1985).  How Sunon portrays itself to customers – "the public's perception" – is a
legitimate part of the alter-ego analysis, as is the extent to which the California branch defers to
the "headquarters" in Taiwan for major decisions.  In re: Latex Gloves Prods. Liab. Litig., No.
MDL 1148, 2001 WL 964105, at *3 (E.D. Pa. Aug. 22, 2001).

to permit a manufacturer to insulate itself from the reach of the forum State's long-arm rule by using an intermediary or by professing ignorance of the ultimate destination of its products."); accord Renner, 33 F.3d at 280 n.2; AMP Inc. v. Methode Elec. Inc., 823 F. Supp. 259, 266 (M.D. Pa. 1993). TruePosition has, moreover, presented evidence, which must be construed in the manner most favorable to TruePosition, see Pinker, 292 F.3d at 368, that Sunon did know or should have known that TruePosition was buying its fans because this purchase was just part of a long-term relationship between the companies (Compl. ¶¶ 18-31; Wu Decl. ¶ 26).

Sunon is off the mark when it argues that its sale of 259,000 other fans to TruePosition is not relevant to the jurisdictional analysis, citing Vetrotex CertainTeed Corp. v. Consolidated Fiber Glass Products Co. In Vetrotex, the court concluded that prior contractual dealings between the parties in the 1980s did not establish specific jurisdiction because the relationship had expressly been terminated 21 months before the contract at issue was created, and the parties had not continued their dealings in the interim. 75 F.3d 147, 149 & n.2, 153 (3d Cir. 1995). TruePosition, by contrast, contemporaneously purchased 259,000 fans from Sunon, and Sunon has admitted contemporaneously sending other fans to TruePosition in Pennsylvania. (Compl. ¶¶ 18-31; Wu Decl. ¶ 26.) These transactions are part of the parties' course of dealings and are properly included in the "highly realistic" analysis that the U.S. Supreme Court has directed courts to undertake. Burger King, 471 U.S. at 479-80 (courts must consider, *inter alia*, prior negotiations and the parties' actual course of dealing); see also Benton v. Cameco Corp., 375 F.3d 1070, 1078 (10th Cir. 2004) (specific jurisdiction established based on, *inter alia*, defendant's history of business transactions with plaintiff's business located in the forum state); Ipoint Ventures, LLC v. Pequot Capital Mgmt., Inc., Civ. A. No. 04-6026, 2005 WL 1828586, at *7-*8 (D.N.J. July 29, 2005) (agreement made two months before the contract at issue evinced

prior course of dealing for specific jurisdiction analysis); <u>Urgent v. Technical Assistance Bureau,</u> <u>Inc.</u>, 255 F. Supp. 2d 532, 537 (D. Va. 2003) (finding specific jurisdiction where "there is more than just an isolated contract" between plaintiff and defendant); <u>Lucerne Farms v. Baling Techs.,</u> <u>Inc.</u>, 226 F. Supp. 2d 255, 260-61 (D. Me. 2002) (specific jurisdiction established based upon, *inter alia*, evidence that "Defendant agreed to a continuing relationship with Plaintiff by including a thirty-day parts warranty and installation provisions").[10]

Even if the contacts of Sunon's agents, Sunon/USA and DA Crowley, could not be attributed to Sunon (as they can and should), and even if TruePosition had not shown that Sunon knew or should have known that its defective fans and fraudulent statement were being directed to Pennsylvania (as it has), specific jurisdiction can be established based solely on Sunon's admitted involvement in the parties' joint efforts to determine the cause of the V1 fans' massive failure. Sunon has volunteered that as part of these efforts its employees participated in "approximately ten conference calls" with TruePosition and exchanged correspondence by email and facsimile with TruePosition. (Wu Decl. ¶¶ 24-25.) Contrary to Sunon's assertion, these contacts are highly relevant to a "highly realistic" analysis of the parties' course of conduct. <u>See</u> <u>Burger King</u>, 471 U.S. at 479-80. While Sunon argues that the calls and correspondence are irrelevant because they allegedly took place one year after the fans were purchased, and after the contract (and warranty) were breached,[11] the Third Circuit rejected this very argument in <u>Mellon</u>

---

[10] Sunon's general strategy of examining each piece of evidence in isolation flies in the face of U.S. Supreme Court precedent, which instructs that all the contacts, together, must be considered as a whole in light of the parties' relationship and the actual course of events. <u>Burger</u> <u>King</u>, 471 U.S. at 479-80.

[11] Sunon's effort to suggest that the communications took place long after the events relevant to the contract occurred is disingenuous and inaccurate. The telephone conferences and written communications took place while the V1 fans were failing. (<u>See</u> Compl. ¶¶ 61-70.)

(continued...)

Bank.  See 960 F.2d at 1223-24 (contacts with Pennsylvania after loans went into default were

relevant to minimum contacts determination); see also Mesalic v. Fiberfloat Corp., 897 F.2d 696,

700 (3d Cir. 1990) (New Jersey had jurisdiction once boatmaker delivered boat to New Jersey

and attempted to repair it there, although the contract had been made and breached in Florida,

and although the boatmaker had no contractual obligation to deliver the boat to New Jersey or

repair it there); H.A.S. Prot., Inc. v. Senju Metal Indus. Co., Ltd., Civ. A. No. 03-1215, 2003 WL

23419852, at *6 (E.D. Pa. Feb. 27, 2003) (finding specific jurisdiction over foreign

part/manufacturer based on investigation it conducted and advice it gave in Pennsylvania after its

products began to fail).   Nor does it make any difference that Sunon's employees entered

Pennsylvania electronically rather than physically.   "[A]t least since the time of International

Shoe, the physical presence of the defendant in the forum has not been regarded as a

jurisdictional litmus test."   Mellon Bank, 960 F.2d at 1225 (finding jurisdiction although the

defendants "have no physical contact with or presence in the Commonwealth") (citing Burger

King, 471 U.S. at 476); accord A.V. Imports, 171 F. Supp. 2d at 373 (the absence of a "physical

presence" is not determinative).   "In modern commercial business arrangements . . .

---

(continued...)

        Neither Vetrotex nor Integral Nuclear Associates support a finding to the contrary.  The
conference calls and communications at issue here concerned performance of the disputed
contract and are therefore certainly part of the course of dealing recognized by the Vetrotex
court.  See 75 F.3d at 153.  Integral Nuclear Associates, LLC v. Nair is inapposite, as there the
court recognized that telephone calls to Pennsylvania did not alter the fact that the dispute
concerned a contract regarding a property located in Maryland used by a Maryland physician in
his Maryland-based practice.  Civ. A. No. 05-382, 2005 WL 2012036, at *6 (E.D. Pa. Aug. 19,
2005).  By contrast, this dispute concerns a contract entered into and performed in part in
Pennsylvania and fraudulent representations directed to Pennsylvania.

communications by electronic facilities, rather than physical presence, is the rule." General Elec. Co. v. Deutz AG, 270 F.3d 144, 150-51 (3d Cir. 2001).[12]

### B.      Sunon Has Not Satisfied its Heavy Burden of Demonstrating that the Exercise of Jurisdiction Would Be Unreasonable

Because TruePosition made out a prima facie case of minimum contacts, Sunon had the burden to present "a compelling case that the presence of other considerations would render jurisdiction unreasonable." Burger King, 471 U.S. at 477; accord Mellon Bank, 960 F.2d 1226-27. Sunon failed to meet that burden in its first brief (see TruePosition Br. at 36-38), and its Reply Brief does as well. The fact that Sunon acted at times through agents, rather than directly, does not mean that exercising juridiction over Sunon does not square with notions of fair play and substantial justice. See Mellon Bank, 960 F.2d at 1226-27; Grand Entm't, 988 F.2d at 483 (Spanish defendants); A.V. Imports, 171 F. Supp. 2d at 375-76 (Italian defendant); Electro Med. Equip., 1999 WL 1073636, at *7 (Swiss defendants). The fact that Sunon not only markets its products here, but receives nationwide patent protection, stipulates to jurisdiction in California, and is admittedly subject to jurisdiction in Washington, D.C. is, in fact, persuasive evidence that this Court will not be placing a unique burden on Sunon by exercising jurisdiction. See Grand Entm't, 988 F.2d at 483 (concluding that the burden of defending a lawsuit in the U.S. was not great enough where one defendant had shown the ability to conduct business in the U.S.); A.V. Imports, 171 F. Supp. 2d at 375 (noting the significance of the fact that federal intellectual-property laws are national in scope); Electro Med. Equip., 1999 WL 1073636, at *7 (defendant had stipulated that it was amenable to personal jurisdiction in Nevada, and any incremental

---

[12] Because the arguments that Sunon has raised concerning general jurisdiction have already been addressed here and in TruePosition's Brief, TruePosition will not separately further brief general jurisdiction.

burden presented by defending itself in Pennsylvania was not relevant to whether jurisdiction is reasonable). Finally, the fact that a number of witnesses are outside of Pennsylvania does not render litigation here unreasonably burdensome, particularly as according to Ms. Ho's own predictions there are just two likely witnesses in California and three in Taiwan.[13]

### C.    TruePosition Is Entitled to Jurisdictional Discovery

TruePosition has requested that it be permitted to conduct jurisdictional discovery if the Court concludes that further information is needed to establish its jurisdiction. (TruePosition Br. at 38-39.) The Third Circuit has again emphasized that courts must allow jurisdictional discovery unless the claims presented are "clearly frivolous." Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 456 (3d Cir. 2003). The allegations of the Complaint and the evidence that TruePosition has presented in opposition to Sunon's motion, separately and together, demonstrate with reasonable particularity the "possible existence of the requisite contacts" between Sunon and Pennsylvania, and jurisdictional discovery is therefore warranted.[14] See id. Sunon's contention that discovery would be pointless because TruePosition has allegedly "turned

---

[13] For this reason, too, Sunon's motion to transfer on the basis of forum *non conveniens* is equally unfounded. While Sunon argues that three potential defense witnesses are no longer employed by Defendants, and therefore allegedly not subject to the Court's subpoena power, Sunon does not establish who they are, where they are, why Defendants cannot get these friendly witnesses to testify, and whether they are subject to compulsory process in California or Pennsylvania. Sunon's assertions that all of Plaintiff's witnesses are still employed by TruePosition and are fewer in number than Defendants' is based on nothing more than speculation. In sum, transferring this case to California for the convenience of Sunon/USA would "merely shift the inconvenience" to the Plaintiff, which is not permissible. Kirschner Bros. Oil Inc. v. Pannill, 697 F. Supp. 804, 807 (D. Del. 1988). None of the arguments that Sunon raises in its Reply Brief satisfies its heavy burden of proving that the balance of convenience is strongly in Defendants' favor. See Endless Pools, Inc. v. Wave Tec Pools, Inc., 362 F. Supp. 2d 578, 587 (E.D. Pa. 2005).

[14] The cases that Sunon cites all predate Toys "R" Us, so to the extent that they describe a higher standard they are no longer good law. (Def. Reply Br. at 22.)

over every stone" is nothing short of facetious. TruePosition does not have access to the records of Sunon or Sunon/USA or DA Crowley, which have the vast bulk of the information related to Sunon's links to Pennsylvania, the relationship among the Defendants, Sunon's involvement in the transactions with TruePosition, and the admissibility of documents and testimony that Sunon has challenged, including website printouts and emails. TruePosition certainly cannot determine the veracity of the statements made in Mr. Wu's declaration, on which Sunon relies, without discovery.

## IV. SUNON'S EVIDENTIARY OBJECTIONS SHOULD BE OVERRULED

TruePosition has demonstrated, with the help of "affidavits, exhibits, or other pertinent documentation," that Sunon has been properly served and is subject to the personal jurisdiction of this Court. LDM Systems, Inc. v. Russo, No. 97-3111, 1997 WL 431005, at *1 (E.D. Pa. July 15, 1997).[15] Sunon has responded with 27 pages of evidentiary objections that are improper in form,[16] lack merit, and serve no legitimate purpose but are meant to vexatiously delay and increase the cost of litigation. At this early stage of the litigation, before TruePosition has had an opportunity to conduct discovery, TruePosition may present evidence via declarations and

---

[15] As Judge Bartle notes in LDM, "an unsworn declaration, made under penalty of perjury, has the same 'force and effect' as an affidavit." Id. at *1, n. 1.

[16] In terms of form, Sunon's objections defy the Federal Rules of Civil Procedure, appearing to be short-hand notes rather than the formal motion and supporting brief required for genuine, substantiated in limine motions or motions to strike. Fed.R.C.P. 7(b) ("An application to the court for an order shall be by motion"). Some courts have found that this failure – failing to assert evidentiary objections in the correct form – waives the objections themselves. Ali v. City of Clearwater, 915 F. Supp. 1231, 1236 (M.D. Fla. 1996) (discussing, in the summary judgment context, motions to strike an affidavit and noting that "at least six (6) circuits treat a party's failure to move to strike as a waiver") (citing Jones v. Owens-Corning Fiberglas Corp., 69 F.3d 712 (4th Cir. 1995), Casa Office Machs., Inc. v. Mita Copystar Am., Inc., 42 F.3d 668, 682 (1st Cir. 1994), Gasaway v. Northwestern Mut. Life Ins. Co., 27 F.3d 957, 960 (9th Cir. 1994), Hicks v. Harris, 606 F.2d 65, 67 (5th Cir. 1979) and Williams v. Evangelical Ret. Homes, 594 F.2d 701, 703 (8th Cir. 1979)).

affidavits, and the Court may consider evidence that is capable of being proven admissible at trial.  See In re Rockefeller Ctr. Props., Inc. Secs. Litig., 184 F.3d 280, 292 (3d Cir. 1999) (allowing consideration of documents authenticated by affidavit); Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc., 998 F.2d 1224, 1234 n.9 (3d Cir. 1993) (hearsay testimony could be considered at summary judgment because it is capable of being presented in trial in an admissible form).

Authentication Objections.  Sunon objects to virtually all of TruePosition's exhibits on authentication grounds.  To the extent that Sunon objects to print-outs that are authenticated by the declarations to which they are attached, Sunon is just incorrect.  In re Rockefeller Ctr. Props., Inc. Secs. Litig., 184 F.3d at 292; Bouriez v. Carnegie Mellon Univ., Civ. A. No. 02-2104, 2005 WL 2106582, at *6-*7 (W.D. Pa. Aug. 26, 2005) (allowing authentication through affidavit). To the extent that Sunon attempts to put the authenticity of any specific page of these print-outs or any of the other documents included in the Exhibits in doubt, TruePosition has supplied additional declarations authenticating each page.  Exs. 2 through 7.

Hearsay Objections.  Sunon also objects to most of the exhibits on hearsay grounds.  To the extent that Sunon objects to assertions made on its own website or in its own publications, Sunon's admission that it operates the website renders these objections moot.  Border Collie Rescue, No. 304CV568J32HTS, 2006 WL 485117, at *15, n. 16 (M.D. Fla. Feb. 28, 2006).  To the extent it tries to deem as "hearsay" statements that it or its agents have made, these statements are admissible as party admissions.  Wright v. Montgomery County, Civ. A. No. 96-4597, 2002 WL 1060528, at *2 (E.D. Pa. May 20, 2002) (noting that an affidavit from a reporter testifying as to party admissions would be admissible).  And to the extent it tries to construe the declarations themselves as hearsay, it is incorrect as to the relevant evidentiary standard.

<u>Williams</u>, 891 F.2d at  466, n. 12 (noting that the evidentiary standard for summary judgment motions is not the same as for trial; while evidence submitted at trial must specifically conform to all the Rules of Evidence, evidence submitted in support of a summary judgment motion must merely be "reducible to admissible" form at trial) (citing <u>Celotex Corp.</u>, 477 U.S. at 327). Finally, to the extent Sunon objects to the Federal Express receipts as improper evidence of the delivery of the Summons and Complaint in August 2005, it is incorrect.   Courts have consistently held that Federal Express receipts are valid proof of delivery. <u>Bakowski v. Kurimai</u>, No. 3:98CV2287 DJS, 2000 WL 565230, at *4 (D. Conn. Mar. 20, 2000) (finding Federal Express proof of delivery forms are "sufficient proof" of receipt); <u>cf.</u> <u>Corcoran v. Shoney's Colonial, Inc.</u>, Civ. A. No. 96-0043-C, 1997 WL 470365, at *2 (W.D. Va. July 31, 1997) (finding that defendant had failed to make his case when Federal Express receipts were not produced). (<u>See also</u> Ex. 5, Peters Decl.)

<u>Relevance and "as a whole" Objections</u>.   Sunon also objects to almost all of TruePosition's exhibits "as a whole" or on grounds of relevance.  These objections are in fact restatements of Sunon's legal arguments, and are fully addressed in TruePosition's Brief and Sur-Reply.  All of the evidence presented is relevant to the issues raised in Sunon's Motion, *i.e.*, it is "evidence that tends to make the existence of a material fact more or less likely." <u>United States v. Johnson</u>, 143 Fed. Appx. 436, 438 (3d Cir. 2005).

<u>Objections to Website Printouts.</u>  Sunon objects to Exhibits A, E, I, O and Exhibit 2 to Dr. Jones' Declaration (Ex. H) on grounds of authenticity and hearsay.  Sunon's objections on grounds of hearsay are without merit because the statement's made on webpages for Sunon and Sunon/USA constitute admissions by Sunon and its sales agent, Sunon/USA.  Fed. R. Evid. 801(d)(2)(A), (C) & (D). <u>DePaola v. Nissan Hosp. Am., Inc.</u>, Civ. A. No. 04-267-W, 2005 WL

2122265, at *7, n. 11 (M.D. Ala. 2005) (finding statements on party's website admissions under Rule 801(d)(2)(B)); Perfect 10, Inc. v. Cybernet Ventures, Inc., 213 F. Supp. 2d 1146, 1155 (C.D. Cal. 2002) (finding assertions on website are not hearsay under Rule 801(d)); Florida Conference Ass'n of Seventh-Day Adventists v. Kyriakides, 151 F. Supp. 2d 1223, 1226 (C.D. Cal. 2001) (finding SEC Reports found on the internet are not hearsay because they were written by a party); Van Westrienen v. Americontinental Collection Corp., 94 F. Supp. 2d 1087, 1109 (D. Or. 2000) ("the representations made by defendants on the website are admissible as admissions of the party-opponent under FRE 801(d)(2)(A)"); see also Alvord-Polk, Inc. v. F. Schumacher & Co., 37 F.3d 996, 1005 n.6 (3d. Cir. 1994) (holding that assertions adopted in a party's own publications are not hearsay under Rule 801(d)(2)).

As for the question of authenticity, all of these exhibits are printouts of information found at www.sunon.com.tw, www.sunon.com, or www.sunonusa.com. Sunon admits that Exhibit A is authentic. (See Ex. A, Obj. 2.) Sunon also admits that www.sunon.com.tw and www.sunonusa.com are authentic internet addresses for Sunon and Sunon/USA respectively (Def. Reply Br. at 11), and many of the pages display these internet addresses, thereby demonstrating on their face that they are what TruePosition claims. See Fed. R. Evid. 901(a); Border Collie Rescue, 2006 WL 485117, at *15 & n.16 (party's acknowledgment that it operated website authenticated it); U.S. Equal Employment Opportunity Comm'n v. E.I du Pont de Nemours & Co., Civ. A. No. 03-1605, 2004 WL 2347559, at *2 (E.D. La. Oct. 18, 2004). The webpages from www.sunon.com were accessed directly from www.sunon.com.tw by clicking on the hyperlink for "English" in the upper left hand corner. (Russakoff Decl. ¶ 3; McKee Supp. Decl. ¶ 5.) Counsel has submitted declarations authenticating the print-outs from Sunon's website. (Russakoff Decl. ¶¶ 3, 5, 7; McKee Supp. Decl. ¶¶ 2, 5.)

Sunon has also objected to these documents on grounds of relevance. Exhibits A, E, and Exhibit 2 to Dr. Jones' declaration are relevant to Sunon's efforts to target Pennsylvania for marketing and its role in the distribution network for Sunon fans. All of these exhibits are also relevant to the fairness and reasonableness of litigating the case in this forum.

Objections to Other Defendants' Documents and Defendants' Statements. Sunon has objected to Exhibits D, N, Jones Declaration ¶¶ 3, 4, 5, 7, 8, 9, 10, 12, and McKee Decl. ¶¶ 3, 4, 6, 7 on grounds of authenticity, hearsay and relevance. The various documents have been properly authenticated. (Russakoff Decl. ¶ 2; Jones Supp. Decl.¶¶ 6-13; McKee Supp. Decl. ¶¶ 2-6.) The statements at issue either were made by Sunon, and therefore constitute party admissions, or are statements of Sunon's agents, including Mike Shannon and Yi-Chin Ho, while acting within the scope of their agency. Fed. R. Evid. 801(d)(2)(A), (C) & (D); see also Chrisiana Marine Serv. Corp. v. Seaboard Shipping Corp., Civ. A. No. 96-8705, 1997 WL 587292, at *3 n.2 (E.D. Pa. Sept. 10, 1997) (admitting portions of an affidavit recounting out-of-court statements by a party). Exhibits D and N are relevant to the fairness and reasonableness of litigating in this forum. To the extent that Sunon is objecting on hearsay grounds to Ms. McKee's testimony in Paragraph 6 and Exhibit 4 concerning her own statement to Ms. Ho, these are admissible under Fed. R. Evid. 801(d)(1)(B), and Exhibit 4 is also admissible under Fed. R. Evid. 803(5) & (6). The statements presented in Dr. Jones' declaration are relevant to the status of DA Crowley and Sunon/USA as agents of Sunon and their operation as a single entity, as well as to TruePosition's reliance on the website. In re: Latex Gloves, 2001 WL 964105, at *3 (setting out considerations for alter-ego analysis); Zippo, 952 F.Supp. at 1125-26 (noting the importance of the actual use of the internet site to the jurisdictional analysis). The statements in Ms. McKee's declaration are relevant to TruePosition's efforts to obtain a waiver

of service from Sunon and to serve Sunon with the Summons and Complaint, and are also relevant to the issue of whether Sunon agreed to accept service and whether Sunon should be equitably estopped from contesting service.

Objections to Government Records. Sunon objects to Exhibits C, F, and M on grounds of authenticity and hearsay. Exhibit C consists of print-outs from the official website of the U.S. Patent & Trademark office; Exhibit F presents corporate records concerning Sunon/USA maintained by the Secretary of State of California; Exhibit M is a State Department circular on service of process in Taiwan. All of these documents are admissible as hearsay exceptions pursuant to Fed. R. Evid. 803(8). See also E.E.O.C., 2004 WL 2347559, at *1; cf. United States ex rel. Dingle v. BioPort Corp., 270 F. Supp. 2d 968, 972 (W.D. Mich. 2003) (court may take judicial notice of government documents from reliable sources on the internet); Power Integrations, Inc. v. System Gen. Corp., No. C 04-02581 JSW, 2004 WL 2806168, at *2-*3 (N.D. Cal. Dec. 7, 2004) (considering the State Department circular as admissible evidence relevant to a motion to quash service). TruePosition has submitted evidence to authenticate these documents. In addition, the internet documents are self-authenticating under Fed. R. Evid. 902(5). See E.E.O.C., 2004 WL 2347559, at *2 (exhibit containing internet domain address and date printed was sufficient to authenticate).

Sunon has also objected on grounds of relevance. The PTO documents are relevant to show that Sunon will not be unduly burdened by litigating this action in the United States, where it holds numerous patents. The California documents are relevant to the issue of whether Sunon and Sunon/USA share corporate officers and directors.

Objections to Newspaper Articles. Sunon objects to Exhibit B, which contains three newspaper articles concerning Sunon's economic activities in the United States and globally, on

grounds of authenticity, hearsay and relevance.   They are self-authenticating, Fed R. Evid. 902(6), and are not hearsay because they are presented as evidence of what the press has reported (TruePosition Br. at 3).   TruePosition seeks discovery on the underlying facts, which are relevant to the fairness and reasonableness of litigating in this forum.

Objection to Dun & Bradstreet Report.   Sunon objects to a Dun & Bradstreet report on grounds of authenticity and hearsay.   The report is self-authenticating, Fed. R. Evid. 902(6), and is admissible under Fed. R. Evid. 803(17).   The report is relevant to the question of whether Sunon and Sunon/USA share officers and directors.

Objections to Declaration of Jacqueline Fu.   Sunon has objected to the Declaration of Jacqueline Fu, largely on the ground that she has not been qualified as an expert, although Sunon had supported its own Motion with the same sort of declaration from a Taiwanese attorney. Ms. Fu is clearly qualified to give an expert opinion on service of process in Taiwan.   Her declaration states that that she has received a legal education at National Taiwan University, and an LLM from the Harvard University School of Law.   Ms. Fu is admitted to the practice of law in Taiwan and New York, and has been admitted to practice in Taiwan for over 15 years.   Ms. Fu further testifies that she is familiar with the laws and rules governing service of process by foreign entities, and has applied that knowledge in other engagements in which she has provided advice concerning service.   See Betterbox Comm'ns Ltd. v. BB Techs., Inc., 300 F.3d 325, 327-28 (3d Cir. 2002) (expert qualifications are judged liberally, and may be demonstrated by academic training and credentials or practical experience).   Ms. Fu applies the same knowledge, experience and skills that she brings to her practice as an attorney in Taiwan to the testimony she provides in her Declaration, and she provides the proper foundation for her conclusions in both her Declaration and her Supplemental Declaration.   Her testimony is clearly relevant to the

issues that Sunon has raised concerning service of original process in Taiwan and the enforcement of foreign judgments.  See, e.g., Power Integrations, 2004 WL 2806168, at *2-*3 (considering declaration of Taiwanese attorney); Dee-K Enters., 174 F.R.D. at 386 (considering testimony of Indonesian counsel); Resource Ventures, Inc. v. Resources Mgmt. Int'l, Inc., 42 F. Supp. 2d 423, 430 (D. Del.1999) (considering affidavit of Indonesian attorney); Modern Computer Corp. v. Ma, 862 F. Supp. 938, 946 (E.D.N.Y. 1994) (considering affidavits from Taiwanese counsel).

Objections to Dr. Jones' Declaration.  Most of the objections to Dr. Jones' Declaration are on improper "relevance" and "as a whole" grounds.  To the extent the objections describe his Declaration as "vague," "conclusory" or "lacking foundation," Dr. Jones has provided a Supplementary Declaration, providing even greater detail as to his decision-making process in purchasing the Sunon fans and his experience as a Pennsylvania-based customer dealing with that company.  (See Jones Supp. Decl., Ex. 3.)

Objections to Ms. Mirlotta's Declaration.   Sunon's objections to Ms. Mirlotta's declaration construe her testimony as an interpretation of the manufacturing agreement between TruePosition and Sanmina.  Objections, p. 27.  This is not a fair reading of the Declaration, which is executed by Sanmina's Program Manager, an individual far more likely to have direct knowledge of the location of Sanmina's documents and facilities than Ms. Ho, the sole source of Sunon's information about the location of Sanmina's evidence.  (Def. Br. at 19-20; Ho Decl. at 2.)

## V.      CONCLUSION

For the foregoing reasons together with those set forth in TruePosition's Brief in Opposition to the Motion, TruePosition respectfully requests that the Motion be denied.

Dated: March 13, 2006                              **HANGLEY ARONCHICK SEGAL & PUDLIN**


                                                   By:   /s/ Sharon McKee
                                                         William T. Hangley
                                                         Sharon F. McKee
                                                         Nina L. Russakoff
                                                         Attorney ID Nos. 03533, 81499, 89592
                                                         One Logan Square, 27th Floor
                                                         Philadelphia, Pennsylvania 19103
                                                         (215) 568-6200

                                                         Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I, Nina Russakoff, hereby certify that on March 13, 2006, I served hard copies of the

foregoing documents, by first class mail, to the following counsel of record:

Donald M. Davis, Esquire
Margolis Edelstein
The Curtis Center, Fourth Floor
Philadelphia, PA 19106-3304

Matthew P. Kanny, Esquire
Yi-Chin Ho, Esquire
Manatt, Phelps & Phillips, LLP
11355 West Olympic Boulevard
Los Angeles, CA 90064


  /s/ Nina Russakoff
Nina Russakoff